UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 09-cv-1167 (RCL) |
| WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

This case's roots can be traced to a Federal Communications Commission ("FCC") action that was initiated nearly twenty years ago. In 1992, plaintiff North American Catholic Education Programming Foundation, Inc. ("NACEPF") applied for a license for Instructional Television Fixed Service ("ITFS") channels around Las Vegas, Nevada. The licenses were instead given to Clark County School District ("CCSD"), and after unsuccessfully exhausting its administrative remedies, plaintiff appealed the Commission's decision to the United States Court of Appeals for the District of Columbia Circuit. Unfortunately, defendant Howard J. Barr—then counsel to plaintiff and an attorney with co-defendant Womble, Carlyle, Sandridge & Rice, PLLC ("Womble")—filed the notice of appeal two days late, and the court dismissed the appeal as untimely filed. *N. Am. Catholic Educ. Programming Found., Inc. v. FCC*, 437 F.3d 1206 (D.C. Cir. 2006). NACEPF then initiated the current legal malpractice suit, arguing—among other things—that it was harmed by defendants' failure to file the notice of appeal in a timely manner.

Because the Court has determined that the D.C. Circuit would not have granted plaintiff relief even had the notice been timely filed, however, plaintiff has not stated a claim upon which relief can be granted. NACEPF's motion for partial summary judgment will be denied, and the Court will grant defendants their motion for partial dismissal.

## II. BACKGROUND

On May 13, 1992, NACEPF applied to the FCC for an ITFS license for four channels in the area of Las Vegas, Nevada. Pl.'s Statement of Material Facts as to Which There Is No Genuine Issue ¶ 7, ECF No. 17, Sep. 18, 2009 ("Mat. Facts"). On December 30, 1993, CCSD filed a competing application, along with a request for the FCC to waive the rule that limited the number of ITFS licenses a single entity could hold in a certain region. Pl.'s Mem. P. & A. Opp. Def.'s Mot. Partial Summ. J. ("Summ. J. Mem.") Ex. H at 1, Sep. 18, 2009, ECF No. 17-12 ("Waiver App."). At the time of CCSD's waiver application there were nearly 150,000 students enrolled in the more than 150 schools that constituted the school district, *see N. Am. Catholic Educ. Programming Found., Inc.*, 12 FCC Rcd. 24449, 24450 (1997), and CCSD was already authorized to use eight ITFS channels (the maximum allowed is four). *See* Waiver App. 1. Plaintiff filed a petition to deny the waiver request, arguing that waiver was not in the public interest and that CCSD had not met the "exceedingly high burden" required in order for waiver to be granted. Summ. J. Mem. Ex. I at 7, ECF No. 17-13 ("Pet. Deny"). At that time, NACEPF was represented by Howard Barr, then an attorney at Pepper & Corazzini, a law firm that would merge with defendant Womble in March 2002. Mat. Facts ¶ 10. The Video Services Division of the Commission's Mass Media Bureau ("MMB") granted CCSD's waiver request, and after following the procedure for deciding between competing applications, determined that CCSD was the tentative selectee. *NACEPF*, 12 FCC Rcd. at 24453.

Plaintiff—with defendants as counsel—petitioned the MMB to reconsider its decision to waive the four-channel rule. Summ. J. Mem. Ex. K, ECF No. 17-15 ("MMB Pet. Recons."). Plaintiff argued that the Division failed to apply the Commission's four-channel waiver rule, that Supreme Court and D.C. Circuit precedent required the Division to apply an "exceedingly high" standard, that the Division's decision did not genuinely engage in reasoned decision-making, and that the decision contravened the Commission's goal of diversity. *Id.* The MMB affirmed, finding "that there are no errors of law or new facts that would warrant reversing the staff action." *Clark Cnty. Sch. Dist.*, 17 FCC Rcd. 5325 (2002). The MMB held that "the Commission properly found that the requested channels are necessary to be able to provide the wide range instructional programming proposed," and stated that "the public interest is *best* served by granting CCSD a waiver of the four-channel rule." *Id.* at 5327 (emphasis added).

At this point, plaintiff enlisted new counsel and filed an Application for Review ("AFR") to the full Commission. Summ. J. Mem. Ex. M at 9, ECF No. 17-17 ("AFR"). Among other things, plaintiff argued that the MMB had not applied the "exceedingly high burden" test and had not analyzed CCSD's need for new channels in terms of the public interest. Plaintiff further argued that the fact that CCSD aired some duplicate programs meant it did not actually need the new channels. The Commission denied the AFR, finding that the grant of waiver was "consistent with the Commission's Rules and precedent." *Clark Cnty. Sch. Dist.*, 18 FCC Rcd. 18815, 18819 (2003). The Commission said that NACEPF had cited no authority in support of its argument based on duplicate programming, and found that in accordance with its precedent, "full utilization of the currently assigned channels [was] not a prerequisite to an applicant's request for additional channels." *Id.* at 18820. The Commission also determined that "Clark County's use of

3

the channels at issue was reasonable and consistent with both precedent and furtherance of the public interest." *Id.* at 18821.

NACEPF then rehired defendants and filed a Petition for Reconsideration ("PFR") to the Commission. Summ. J. Mem. Ex. O, ECF No. 17-19 ("PFR"). On October 8, 2004, the Commission held, in accordance with its precedent, that the PFR would be denied because it did not "present any new facts or changed circumstances," and raised new arguments that should have been raised before the MMB in the first instance. 19 FCC Rcd. 20169, 20173 (2004).

On November 9, 2004, thirty-two days after the Commission's denial of the PFR, defendant Howard Barr filed a notice of appeal on behalf of plaintiff with the D.C. Circuit. The Circuit dismissed the appeal as untimely on January 31, 2006. *NACEPF*, 437 F.3d 1206. On June 26, 2009, plaintiff filed the instant suit for legal malpractice, breach of contract, breach of fiduciary duty, and breach of implied covenant of good faith and fair dealing against Howard Barr and his firm, Womble. The complaint contains several allegations, but because the current motions pertain only to the Las Vegas application, it suffices to say that the other claims concern other license applications in which defendant allegedly made errors in its work on behalf of NACEPF. Defendants moved for partial dismissal on July 28, 2009, and plaintiff filed its motion for summary judgment and opposition to the motion for partial dismissal on September 19, 2009. The Court will deal with plaintiff's arguments in turn, first reaching its argument that the D.C. Circuit—had it not dismissed plaintiff's appeal as untimely—would have overturned the FCC's decision based on *Northeast Cellular Tel. Co. v. FCC*, 897 F.2d 1164 (D.C. Cir. 1990), and *WAIT Radio v. FCC*, 418 F.2d 1153 (D.C. Cir. 1969). It will then discuss plaintiff's argument that the FCC followed unlawful precedent, and finally deal with any remaining arguments plaintiff made before the D.C. Circuit and in its motion for partial summary judgment.

4

## III. LEGAL STANDARD

Review of a magistrate judge's report and recommendation for a dispositive motion is *de novo.* Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C § 636(b)(1); *United States v. Wheeler*, 746 F. Supp. 2d 159, 161 (D.D.C. 2010). However, the Court may only review those parts of the report and recommendation that the parties have properly objected to. *See Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To satisfy this test, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, a court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*; *see also Atherton*, 567 F.3d at 681 (holding that a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## IV. DISCUSSION

In order for a plaintiff to prevail on a legal malpractice claim, he or she must prove the applicable standard of care, a breach of that standard, and a causal relationship between the

5

violation and harm alleged. *Television Capital Corp. of Mobile v. Paxson Commc'n Corp.*, 894 A.2d 461, 469 (D.C. 2006). The present motions only deal with the third requirement: the causal link between Womble's late filing of the notice of appeal and any alleged harm that resulted. In order to establish causation, NACEPF must demonstrate that the D.C. Circuit would have vacated and remanded the FCC's decision *and* that the Commission would have held for them on remand. The Court must first determine how the appeal would have been decided—which is a question of law for the judge in a legal malpractice suit. *See Hickey v. Scott*, 2011 U.S. Dist. LEXIS 74057, at *9–*10 (D.D.C. July 11, 2011) (citing *Royal Ins. Co. of Am. v. Miles & Stockbridge P.C.*, 133 F. Supp. 2d 747, 762 (D. Md. 2001)). Plaintiff correctly points out that if the Court determines that the D.C. Circuit would have vacated and remanded, the determination of what would have happened on remand is a question of fact for the jury to decide. *See Royal Ins. Co. of Am.*, 133 F. Supp. 2d at 768. However, because the Court finds that plaintiff did not validly offer any arguments to the D.C. Circuit that would have led the court to vacate and remand the FCC's decision, resolution of the first part of the causation analysis is sufficient to dismiss the legal malpractice claim. If a legal malpractice suit is dismissed, claims based on the same facts but on other legal theories—such as breach of contract—will be dismissed as well. *Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 257 (D.D.C. 2008). Thus, because plaintiff cannot succeed on its legal malpractice claim, all of its claims related to NACEPF's Las Vegas market application—breach of contract, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty— will be dismissed.

  A.  **Plaintiff's arguments based on *WAIT Radio* and *Northeast Cellular***

In its motion for summary judgment, NACEPF argues that the FCC's waiver of the four-channel rule would have been overturned on appeal because the FCC did not comply with *WAIT Radio*, 418 F. 2d 1153, and *Northeast Cellular*, 897 F.2d 1164. This argument would not have

6

succeeded in the D.C. Circuit because NACEPF did not raise the argument before the Commission itself. Even had it been raised, the Court is not persuaded that the D.C. Circuit would have vacated the FCC decision on those grounds.

The D.C. Circuit "cannot review 'questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass.'" *NetworkIP, LLC v. FCC*, 548 F.3d 116, 122 (D.C. Cir. 2008) (quoting 47 U.S.C. § 405(a)). "If a petitioner could have called a question of law or fact to the agency's attention but did not, the issue is waived." *Id.* "[A]n issue need not be raised explicitly; it is sufficient if the issue was 'necessarily implicated' in agency proceedings." *Id.* (quoting *Time Warner Entm't Co. v. FCC*, 144 F.3d 75, 79–80 (D.C. Cir. 1998)). But the D.C. Circuit has "'strictly construed' § 405(a), 'holding that [the D.C. Circuit] generally lack[s] jurisdiction to review arguments that have not first been presented to the Commission.'" *Globalstar, Inc. v. FCC*, 564 F.3d 476, 483 (D.C. Cir. 2009) (quoting *Qwest Corp. v. FCC*, 482 F.3d 471, 474 (D.C. Cir. 2007)). NACEPF does not claim that it could not have raised the argument to the Commission, instead arguing that the *WAIT Radio* and *Northeast Cellular* arguments it raises on summary judgment were necessarily implicated by its discussion of the public interest in its FCC filings. They were not.

In its Reply in Support of Its Objections to the Report & Recommendation of the Magistrate Judge, ECF No. 36 ("R&R Reply"), plaintiff insists that the Court "need review only two bodies of material to verify that [NACEPF advanced arguments based on *WAIT Radio* and *Northeast Cellular*:]" (1) a number of sections of NACEPF's FCC filings, and (2) the two cases themselves. R&R Reply 1. The Court has examined those sources and remains unconvinced. At best, plaintiff's argument before the FCC amounts to an argument that waiver should not have been granted because it was not in the public interest. While perhaps persuasive, that argument is

7

quite different from the argument it makes now: that *Northeast Cellular* requires an agency to use a comparative test to "explain why its waiver better served the public interest than adhering to the rule and articulate special circumstances that justify the waiver." Pl.'s Mem. P. & A. Opp. Def.'s Mot. Partial Summ. J. 18, Sep. 18, 2009, ECF No. 17.

The issue is not, as plaintiff insists, whether it made "arguments based on the principles embodied in *WAIT Radio* and *Northeast Cellular*," R&R Reply 5, but whether the issues in those cases were "necessarily implicated by the argument made to the Commission." *Time Warner*, 144 F.3d at 80. Most of plaintiff's references are to arguments that merely state that waiving the four-channel rule is not in the public interest, which is a far cry from a requirement that in every case the Commission explain why waiver better serves the public interest than adherence to a rule. *See* Pet. Deny 4–7 ("Because the District's application . . . would result in monopolization . . . it is not in the public interest, and should therefore be denied."); MMB Pet. Recons. 9, 11–12 (describing the "threat to diversity" that waiver creates). Plaintiff also points to portions of its Petition for Reconsideration to the FCC, although it is not exactly clear why. As best as the Court can surmise, plaintiff is attempting to equate its argument there that "[t]he Commission's decision cannot be sustained absent some rationalization of its apparently inconsistent position 'by reference to principles consistent with the underlying logic of the four channel rule," Summ J. M. Ex. O at 10–11, 12–13 ("FCC Pet. Recons."), with the *WAIT Radio/Northeast Cellular* test—but this is too far-fetched to be maintained.

The closest plaintiff comes to implicating the *WAIT Radio/Northeast Cellular* argument is in its Application for Review to the Commission. App. Rev. 5. There, plaintiff argues that "[n]either in the *Bureau Order* nor in the *Prior Order* gives [sic] any hint of *analysis* of the gravity of Clark's need for the additional channels in terms of public policy or the public

8

interest." *Id.* (emphasis in original). Nowhere in the text surrounding this excerpt does plaintiff mention *WAIT Radio* or *Northeast Cellular*. And though this argument makes a gesture towards public interest analysis, it still does not necessarily implicate the specific, two-part test allegedly required by *Northeast Cellular*. Simply saying that "the FCC failed to analyze the waiver in terms of public interest" is not the same as, nor does it necessarily implicate, what plaintiff argued on summary judgment, which was that the agency must compare its options and "explain why its waiver better served the public interest than adhering to the rule." Summ. J. Mem. 18. Plaintiff never raised the *WAIT Radio*/*Northeast Cellular* argument in front of the FCC, nor did any of its arguments in front of the Commission necessarily implicate that issue, and so these arguments are waived. *NetworkIP*, 548 F.3d at 122. Plaintiff points to several points in its brief before the D.C. Circuit where it supposedly raised these arguments. This is irrelevant. The question is not whether NACEPF can raise new arguments before this Court, but whether those arguments could have been properly raised before the D.C. Circuit. They could not have been, and any implication that they were raised before the D.C. Circuit—which, in the Court's opinion, they were not—has no bearing on the current case.

Even had NACEPF's *WAIT Radio/Northeast Cellular* argument not been waived, the Circuit court would not have held for plaintiff on that ground. Plaintiff characterizes *WAIT Radio* and *Northeast Cellular* as creating a strict requirement that agencies say the magic words "public interest" and "special circumstances" before granting waiver. This interpretation is at odds with a proper reading of the cases and their progeny.

*WAIT Radio* concerned the FCC's denial of a request for waiver of its clear channel rules. 418 F.2d at 1155. The Court remanded, holding that waiver requests "stated with clarity and accompanied by supporting data, are not subject to perfunctory treatment, but must be given a

9

'hard look.'" *Id.* at 1157. This is the crux of *WAIT Radio*—that waiver applications cannot be summarily dismissed without explanation. The court emphasized a need for appropriate procedures for waiver to ensure even-handed application, *see id.* ("a system where regulations are maintained inflexibly *without any procedure for waiver* poses legal difficulties") (emphasis added), and said that "[s]ound administrative procedure contemplates waivers, or exceptions granted only pursuant to a relevant *standard*." *Id.* at 1159. The court did not lay down a hard-and-fast rule requiring a specific explanation from the agency, saying that "the agency is not required to author an essay for the disposition of each application [for waiver]. It suffices, in the usual case, that we can discern the why and the wherefore." *Id.* at 1157 (internal citations omitted).

The Circuit went a bit further in *Northeast Cellular*, establishing a rule that "[t]he agency must explain why deviation serves the public interest and articulate the nature of the special circumstances to prevent discriminatory application and to put future parties on notice as to [waiver's] operation." 897 F.2d at 1166. But in reversing the FCC's grant of a waiver, it relied heavily on the second part of the test, holding that "[t]he FCC's reasoning wholly ignores the second requirement of *WAIT Radio*: it does not articulate any *standard* by which [the Court] can determine the *policy* underlying its waiver." 897 F.2d at 1166 (emphasis added). Throughout the case, the Circuit emphasized not a cut-and-dry rule but the need for a waiver policy "founded upon an 'appropriate general standard.'" *Id.* at 1167. *See also id.* ("the FCC has not simply deviated from exemption *standards*; it never stated any *standards* in the first place.") (emphasis added); *id.* ("Under the Commission's blanket statement, future applicants—and this court— have no ability to evaluate the applicability and reasonableness of the Commission's waiver *policy*.") (emphasis added); *id.* ("We hold that the FCC's decision was arbitrary and capricious

10

because it was not based on any rational waiver *policy*. . . . this waiver reflects an outrageous, unpredictable, and unworkable *policy* that is susceptible to discriminatory application.") (emphasis added). Thus, properly understood, *WAIT Radio* and *Northeast Cellular* mean that the Commission must determine that waiver is in the public interest and apply a rational standard to determine whether or not the circumstances are sufficiently unique to merit circumvention of the rule.

This reading comports with *WAIT Radio*'s statement that waivers should be "granted only pursuant to a relevant standard," 418 F.2d at 1159," and that "a commission need not re-study the entire problem de novo and reconsider policy every time it receives an application for waiver," *id.* at *1157*, as well as with *NetworkIP*, 548 F.3d 116, the Circuit's most recent discussion of the subject. In *NetworkIP*, the court expressed a concern about the broad discretion agencies had in determining whether waiver was in the public interest, and suggested that the special circumstances requirement was an "additional restraint." *Id.* at 127. The court saw that requirement as a way to ensure that agencies used more than a "we-know-it-when-we-see-it standard," a means of reducing "the danger of arbitrariness (or worse)" posed by "opaque" waiver criteria, and a test that would "prevent discriminatory application and. . . put future parties on notice as to [the waiver policy's] operation." *Id.* at 127 (internal citations omitted). The *NetworkIP* court found the FCC's waiver unlawful because "procrastination plus the universal tendency for things to go wrong" did not constitute a "special circumstance" and the FCC could not explain the grant of waiver in terms of a sound, rational policy. *Id.*

The FCC's waiver to CCSD does not suffer from the same deficiencies. In its Memorandum Opinion & Order, the Video Services Division of the MMB explained the standard used to determine whether waiver was proper:

11

> An applicant seeking waiver of Section 74.902(d) must demonstrate how the additional channels will be used for traditional ITFS purposes and why present channel capacity is insufficient to accommodate the additional needs. In assessing such showings, the Commission has stated that waivers may be granted only where the applicant can overcome a heavy burden of proof. Among the factors we consider in acting on requests for waiver of the four-channel limitation are the amount of ITFS programming that is being proposed on all of the channels involved, the simultaneous use of the channels for a substantial portion of the day, the extent of repetition of the programming and a demonstrated need for the additional channels.

12 FCC Rcd. 24449, 24450 (1997) (internal citations omitted). The Bureau went on to explain why CCSD's application met these criteria and warranted waiver—that is, why CCSD's circumstances were sufficiently unique to merit waiver of the four-channel rule. In the Full Commission Memorandum & Order, the Commission explained that:

> the Division twice reached the determination that, *given all of the circumstances* surrounding the request and weighing all of the factors, granting a waiver of the four-channel limitation was fully warranted and *in the public interest*. Given the *specific circumstances* of this matter, we believe that Clark County's use of the channels at issue was reasonable and *consistent with both precedent and furtherance of the public interest*.

*Clark Cnty. Sch. Dist.*, 18 FCC Rcd. at 18821 (emphasis added). In *WAIT Radio*, the D.C. Circuit said that in reviewing an agency's grant of waiver, "[i]t suffices, in the usual case, that [the Court] can discern the why and the wherefore." 418 F.2d at 1157. In *Northeast Cellular* and *NetworkIP*, neither of which proposed to overturn *WAIT Radio*, the Circuit vacated agency decisions where the Commission offered no substantial explanation for why or how it reached its decision on waiver. Here, the FCC did offer an explanation, and "public interest" and "special circumstances" are not talismanic phrases that the FCC is required to religiously utter in every waiver decision. The Commission said "the public interest is *best* served by granting CCSD a waiver of the four-channel rule," *Clark Cnty. Sch. Dist.*, 17 FCC Rcd. at 5327, and upheld waiver "[g]iven the specific circumstances of [the] matter." *Clark Cnty. Sch. Dist.*, 18 FCC Rcd. at 18821. This is sufficient.

The Commission followed its precedent and applied a rational standard to determine whether waiver was in the public interest and whether CCSD's circumstances were sufficiently unique to warrant waiver. Its decision was not arbitrary and capricious, and the Court will not deem it so merely because it did not use the precise phrasing suggested—but not required—by the D.C. Circuit. Thus, even had plaintiff not waived its *WAIT Radio* and *Northeast Cellular* arguments by failing to raise them before the FCC, the D.C. Circuit would not have vacated the FCC's decision on those grounds.[1]

### B. Plaintiff's Argument that the FCC Relied on Unlawful Precedent in Granting CCSD's Waiver Request

In the alternative, plaintiff argues that summary judgment is appropriate even though the FCC followed its precedent in granting waiver because that precedent was unlawful. *See* Summ. J. Mem. 26. While this specific argument was never made before the FCC, some of the issues it raises were, and so the court will not consider it waived entirely. In its summary judgment memorandum, plaintiff puts forward three arguments for why the waiver decision followed unlawful precedent. The first argument—that the FCC's decision was inconsistent with *Northeast Cellular* and *WAIT Radio*—would have been waived in the Circuit, as explained above. The second argument is that the FCC's waiver standard "was legally deficient for the reasons stated in the D.C. Circuit briefs that Womble filed on NACEPF's behalf (and reiterated herein)." *Id.* The third is that "the FCC effected the 'evisceration by waiver' of the four-channel

---

[1] The Court is aware that this dual argument puts it in the seemingly contradictory position of arguing both that the FCC was never given the chance to pass on the *Northeast Cellular* rule, and that the Commission's ruling complied with those precedents. However, in determining whether 47 § 405(a) applies, the question is "whether a reasonable Commission *necessarily* would have seen the question raised before [the Circuit] as part of the case presented to it," *Time Warner*, 144 F.3d at 81, and for the Circuit to reach an issue "the Commission must have somehow been put on notice of the problem." *Qwest Corp. v. FCC*, 482 F.3d 471, 474 (D.C. Cir. 2007). Neither plaintiff, CCSD, nor the FCC cited to *Northeast Cellular* or *WAIT Radio* in their filings and orders, and it is unclear whether the FCC was even aware of those cases. But that the FCC inadvertently followed D.C. Circuit precedent does not change the fact that it actually did follow precedent, nor does it undermine the conclusion that that issue was neither raised before the Commission nor necessarily implicated by any of the arguments raised before it.

13

rule, which the D.C. Circuit held is unlawful." *Id.* Neither of the latter two arguments warrants summary judgment, so plaintiff's motion must fail.

Plaintiff argues that the FCC followed unlawful precedent "for the reasons stated in [its] D.C. Circuit briefs" and says that "[b]lind adherence to precedent that is itself unlawful cannot justify similarly unlawful action." *Id.* Before the Circuit, NACEPF contested the FCC's decision on many grounds, arguing that the waiver ruling was inconsistent with the FCC's anti-monopolization policy, Summ. J. Mem. Ex. U at 21, ECF No. 17-25 ("Circuit Brief"); that the ruling was inconsistent with the FCC's spectrum efficiency goals, *id.* at 23; that the FCC's history of granting waiver constituted impermissible rulemaking, *id.* at 26; that the ruling was inconsistent with the exceedingly high burden required to waive the four-channel rule, *id.* at 28; that the FCC was required to inquire about possible alternatives to waiver; *id.* at 29; that the FCC did not properly address CCSD's obligation to demonstrate why the current channel capacity was insufficient, *id.* at 30; and that granting CCSD permission to amend its waiver request subsequent to the cut-off date violated the FCC's rules, *id.* at 31. The Court will not reach these last four arguments because their necessary premise is that the FCC did not follow its own precedent in granting waiver. Indeed, they fall under the section of the Circuit brief entitled "The Commission's Grant of a Waiver of the Four Channel Limit in this Case Contradicts Commission Precedent." *Id.* at 27. Here, however, plaintiff is arguing that the FCC *did* follow precedent, but that the precedent it followed was unlawful. NACEPF cannot logically argue both that the FCC broke with precedent and that the FCC unlawfully followed precedent, so those arguments will be disregarded.

Review of plaintiff's remaining arguments—that waiver was inconsistent with the FCC's anti-monopolization and spectrum efficiency policies[2] and that the repeated waiver of the four-channel rule constituted impermissible rulemaking on the part of the FCC—is waived because plaintiff failed to object to the Magistrate's Report & Recommendation on those grounds. *See Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997) ("[O]nly those issues that the parties have raised in their objections to the Magistrate Judge's report will be reviewed by [the district court]"); *see also* Fed. R. Civ. P. 72(b) ("The district judge must determine de novo any part of the magistrate judge's disposition *that has been properly objected to*."). Plaintiff mentions anti-monopolization and efficiency concerns in its objections, but it does so in the context of asserting that it had brought the *Northeast Cellular* argument before the Commission. Nowhere does it suggest that the D.C. Circuit would have granted it relief because the FCC followed unlawful precedent that ignored anti-monopolization policies and spectrum efficiency goals. Plaintiff's impermissible rulemaking argument is doubly moot. Plaintiff failed to object to the Magistrate's determination that it had not made that argument before the Commission, which is just as well, as the record unequivocally supports the Magistrate's ruling. NACEPF never made the argument before the Commission, and it could not do so for the first time before the D.C. Circuit. Because plaintiff did not object to the Magistrate's denial of these arguments in sustaining plaintiff's motion to dismiss, the Court is not permitted to review them. *Id.*

Plaintiff's third argument is that the Commission's consistent waiver of the four-channel rule constitutes an impermissible "evisceration by waiver" that would have persuaded the D.C. Circuit to overturn the FCC's decision. Essentially, plaintiff argues that the FCC's history of

---

[2] The Court is aware that this argument seems to fit under the first category, as it could be read to mean that the FCC was not following its own precedent. However, plaintiff's point in making the argument was that the FCC precedent the Commission followed was at odds with its stated policies, and therefore unlawful. For this reason, the Court will not group these two points with the aforementioned arguments.

frequently waiving the four-channel rule is unlawful. The Court will not pass judgment on whether this argument was made before the Commission, as the simple lack of authority plaintiff provides is sufficient to dispose of it. In fact, the only authority plaintiff (repeatedly) cites is the phrase "evisceration by waiver" from *WAIT Radio*. 418 F.2d at 1159.[3] But the full context in which the phrase was used undermines plaintiff's argument. What the court in *WAIT Radio* actually said was that:

> [t]he court's insistence on the agency's observance of its obligation to give meaningful consideration to waiver applications emphatically does not contemplate that an agency must or should tolerate evisceration of a rule by waivers. On the contrary a rule is more likely to be undercut if it does not in some way take into account considerations of hardship, equity, or more effective implementation of overall policy, considerations that an agency cannot realistically ignore, at least on a continuing basis.

*Id.* A mere warning to agencies that they should not feel that the court's holding requires them to blindly grant waivers is not sufficient authority to overturn the FCC's ruling in this case. The court's digression is properly understood as a warning that—though the court was overturning the FCC's unexplained denial of waiver—agencies should not let the pendulum swing the other way by indiscriminately granting waivers. The FCC did not do so in this case, nor—as far as this Court can tell—had it in the past. It applied a reasonable, clear standard, and granted waivers where doing so would be consistent with that standard. Plaintiff points to a number of cases where the FCC has granted waivers and insists that the Commission almost never denies waiver requests. That may be, but as long as it does not "act out of unbridled discretion or whim," *WAIT Radio*, 418 F.2d at 1159, and grants waivers "pursuant to a relevant standard," *id.*, the Court will not consider the its actions arbitrary and capricious.

While plaintiff may have raised arguments in the Circuit Court beyond those it mentions in its summary judgment memorandum, the Court will not reach them. In opposing defendant's

---

[3] The exact phrase is actually "evisceration of a rule by waivers," but plaintiff's repeated misquoting is immaterial.

motion to dismiss (plaintiff's motion for summary judgment also served as its opposition to defendants' motion to dismiss), plaintiff only argued that it would have succeeded in the Circuit Court because of *Northeast Cellular* and because the FCC allegedly followed unlawful precedent. "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments . . . a court may treat those arguments that the plaintiff failed to address as conceded." *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997); *see also Peter B. v. CIA*, 620 F. Supp. 2d 58, 69 (D.D.C. 2009). In the same way, in only arguing that it would have succeeded in the Circuit based on the two aforementioned arguments, plaintiff barred itself from arguing that the Circuit would have granted relief on any other grounds. Because the Court has dismissed the only arguments plaintiff brought in opposition to defendants' motion to dismiss, the Court will treat as conceded all other arguments. Plaintiff's motion for partial summary judgment is denied, and defendants' motion for partial dismissal is granted.

## V. CONCLUSION

Defendants may have violated their standard of care by filing the notice of appeal two days late, but a plaintiff seeking to win a legal malpractice case must also demonstrate a causal relationship between that negligence and a harm that it suffered. NACEPF is unable to satisfy this second requirement. NACEPF may have been a deserving applicant for the ITFS channels, but so was CCSD. The Commission followed the precedent it was required to follow, and the Court will not hold its decision to be arbitrary and capricious merely because it analyzed the competing interests in a way that displeased plaintiff. NACEPF waived several arguments by failing to bring them up in front of the Commission, and the Court is nevertheless convinced that it would not have prevailed in front of the Circuit with the arguments it had at its disposal. After

17

careful consideration of the parties' filings, the applicable law, and the record herein, the Court grants defendants' motion for partial dismissal, and denies plaintiff's motion for partial summary judgment. All of plaintiff's claims arising out of the Las Vegas ITSF application are dismissed, and plaintiff's objections to the magistrate's Report and Recommendation are overruled.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 5, 2011.