UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 09-cv-1167 (RCL) |
| WOMBLE, CARLYLE, SANDRIDGE & RICE, PLLC, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

This case arises out of plaintiff North American Catholic Education Programming Foundation, Inc.'s ("NACEPF") dissatisfaction with the legal services and advice that co-defendants Howard J. Barr and Womble, Carlyle, Sandridge & Rice, PLLC ("Womble") have provided to NACEPF. The events date back to 1992, and concern defendants' representation of NACEPF in matters relating to educational television channel licensure.

Before the Court are two related motions. First is the defendants' Motion for Partial Judgment on the Pleadings, claiming that three of plaintiff's four causes of action duplicate plaintiff's legal malpractice claim. Second is plaintiff's Motion to Amend Complaint.[1] Plaintiff

---

[1] On August 16, 2012, the defendants filed a Motion for Relief for Plaintiff's Failure to Preserve the Integrity of Documents ("Mot. for Relief"), based on statements the plaintiff made in its Reply to Defendants' Opposition to Motion to Amend Complaint (Aug. 10, 2012). In its reply, plaintiffs had claimed that certain memoranda—attached as exhibits to defendants' Opposition to Plaintiff's Motion to

claims its amended complaint addresses the issues raised by defendants' motion, thus making defendants' motion moot. Because Counts II, III and IV in the original complaint duplicate plaintiff's legal malpractice claim, the Court will grant defendants their Motion for Partial Judgment on the Pleadings. Furthermore, because plaintiff has or should have long been aware of the information underlying the proposed amendment, amendment would delay trial and prejudice defendants, and there is a dilatory motive for the amendment, the Court will deny plaintiff's Motion to Amend Complaint.

## II.     BACKGROUND

NACEPF is a non-profit organization providing educational broadcasting programming. NACEPF distributes its programming to schools and correctional facilities through numerous Educational Broadcasting Service ("EBS," formerly known as Instructional Television Fixed Service ("ITFS")) stations throughout the country. EBS channels occupy a portion of the broadcast spectrum reserved by the Federal Communications Commission ("FCC") for educational programming.[2] The FCC reviews and grants licenses for these reserved educational channels. Each applicant has to meet certain requirements concerning the quality and quantity of

---

Amend Complaint (Aug. 3, 2012)—actually came from Womble's files. Reply to Defs.' Opp. to Mot. to Am. Compl. at 2. The defendants responded, in a motion for relief, that this could only be true if plaintiff had committed errors in document preservation and production. Mot. for Relief at 2–3. On August 22, 2012, the parties had resolved the motion for relief by stipulation, with the plaintiff agreeing to withdraw the offending language from its reply. Pl.'s Resp. to Defs.' Mot. for Relief. The same day, the Court entered an Order in line with the parties' stipulation and mooted defendants' motion for relief. Order re Defs.' Mot. for Relief (Aug. 22, 2012). Although the Court did not deem the language in question material to its decisions today, the Court has duly considered the effect of the changed language.

[2] Each "over-the-air" television station in a particular area broadcasts at a different frequency to avoid signal interference. The FCC regulates and licenses which stations may broadcast on which frequencies. The ITFS/EBS program grew out of a desire to reserve portions of the public airwaves for educational programming and prevent television from becoming a "vast wasteland." *See, e.g.,* Newton N. Minow, Chairman, FCC, "Television and the Public Interest," Remarks before the Convention of the Nat'l Ass'n of Broad. (May 9, 1961) (disparaging commercial television and hoping television could serve pubic interest); *In re Amendment of Parts 2 and 4 of the Commission Rules and Regulations to Establish a New Class of Educational Television Service*, 39 F.C.C. 846, 852 ¶ 23 (1963) (creating ITFS).

its educational programming. 47 C.F.R. § 74.932 (1993). Each institution can hold licenses for up to four channels in a particular area, 47 C.F.R. § 74.902(d)(1) (1994), but the FCC may waive this "four-channel rule" upon a showing of good cause. 47 C.F.R. § 1.3 (1994); *see also Northeast Cellular Tel. Co. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir 1990). NACEPF holds several of these licenses, and community colleges and school districts frequently use these channels to distribute training and educational programming to classrooms.

Over the years, the FCC has changed how it evaluates applications and awards licenses for ITFS/EBS channels. There are a limited number of dedicated educational channels, so the FCC has developed procedures to decide between competing "mutually exclusive" applicants. Prior to 1998, as channels became available, the FCC gave public notice of windows during which it would accept new applications. 47 C.F.R. § 74.911(c) (1993). If the FCC received more qualified applicants than available channels in a particular geographic market, the FCC resolved the mutually exclusive applications through a comparative point system. The system weighed such factors as ties to the local community, accreditation, quantity and diversity of educational programming, and compliance with the four-channel rule. An applicant can receive a maximum of twelve points, and the applicant with the most points would receive the channels. 47 C.F.R § 74.913 (1993).

In August 1998, the FCC announced it would transition from the point system to deciding mutually exclusive applications through a competitive auction. *In re Implementation of §309(j) of the Communications Act – Competitive Bidding for Commercial Broadcast & Instructional Television Fixed Serv. Licenses,* 13 F.C.C.R. 15920, 15999–16001 (1998). In announcing this change, the FCC allowed mutually exclusive applicants an opportunity to settle their competing applications. *Id.* During this "settlement period," the mutually exclusive applicants could

negotiate and divide the available channels amongst themselves.  If the settlement talks failed, the FCC would decide the pending mutually exclusive applications through the new competitive auction procedure.  The auction procedure remains in place today.  47 U.S.C. § 309(j) (2006).

Dating back to at least 1992, Mr. Barr—then a partner of Pepper & Corazzini—had been representing NACEPF in its efforts to secure and retain licenses for ITFS/EBS channels.[3]  From 1992 to 2006, the defendants represented NACEPF in a variety of communications regulatory matters.  The plaintiff claims that during this period the defendants committed several instances of legal malpractice in connection with several licensure applications.  In March 2006, NACEPF terminated Womble, as a result of this alleged malpractice.  Womble promptly transferred is client files—some 30–40 bankers' boxes of documents—to NACEPF, which kept the files in a Rhode Island storage facility.  *See* Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl. at 1.

In June 2009, plaintiff brought the instant suit, claiming legal malpractice, breach of contract, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty.  The plaintiff grouped its claims by the geographic markets affected.  First, plaintiff alleges that defendants failed to timely file notice of appeal of a FCC denial of NACEPF's application for EBS channels in the Las Vegas market.  Plaintiff's Complaint and Jury Demand ("Compl.") ¶¶ 20–30.  Second, plaintiff alleges that defendants failed to file a renewal application for one of NACEPF's two Albuquerque, New Mexico licenses.  Compl. ¶¶ 31–39.  Third, plaintiff alleges that defendants failed to monitor adequately the status of the application and settlement agreements respecting licenses in the Toledo, Ohio market.  Compl. ¶¶ 40–50.  Fourth, plaintiff alleges that defendants failed to advise NACEPF about the legal significance of the settlement periods in relation to NACEPF's license applications in the Alamosa, Grand Junction, and

---

[3] In March 2002, Pepper & Corazzini merged into Womble, and Mr. Barr joined the partnership at Womble.  Defendants Barr and Womble continued to represent NACEPF until March 2006, when the plaintiff terminated Womble.

Eureka markets. Compl. ¶¶ 51–60. Fifth and final, the plaintiff alleges that defendants had not detected and informed NACEPF of an erroneous dismissal of an EBS station application in the Swainsboro, Georgia market. Compl. ¶¶ 61–70.

On August 5, 2011, this Court granted defendants' Motion for Partial Summary Judgment, dismissing the claims relating to defendants' representation of NACEPF in the Las Vegas market.[4] *N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Caryle, Sandridge & Rice, PLLC*, 800 F. Supp. 2d 239 (D.D.C. 2011) (Lamberth, C.J.). This Court found that plaintiff could not prove that the defendants' failure to file notice of appeal caused plaintiff harm, because plaintiff would not have prevailed in its appeal. *NACEPF*, 880 F. Supp. 2d at 251. For the remaining claims, the Court set the fact discovery cutoff for July 13, 2012 and trial for September 4, 2012. Order Grant. & Modifying Mot. for Scheduling Order (May 11, 2012).

## III.   LEGAL STANDARD

### A. Defendants' Motion for Partial Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings…[a]fter the pleadings are closed—but early enough not to delay trial." A motion for judgment on the pleadings "shall be granted if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (citations and internal quotations omitted). "In considering a motion for judgment on the pleadings, the Court should 'accept as true the allegations in the opponent's pleadings' and 'accord the benefit of all reasonable inferences to the non-moving party.'" *Id.* (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987)).

---

[4] In its complaint, the plaintiff described the Las Vegas claims as the "[d]efendants' most significant error." Compl. ¶ 2.

5

### B. Plaintiff's Motion to Amend Complaint

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated that leave should be "freely given" absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. at 182; *see also Atchinson v. District of Columbia*, 73 F.3d 418, 425-27 (D.C. Cir. 1996) (applying *Foman*). One of the "most important factor[s]" to consider is "the possibility of prejudice to the opposing party." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971) ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice that [opposing party] would have suffered as a result."). Courts should also consider "the length of delay between the latest pleading and the amendment sought" and whether the amendment "would unduly increase discovery or delay the trial." *Djourabchi*, 240 F.R.D. at 13 (citing Wright, Miller & Kane, *Federal Practice and Procedure* §§ 1487–88).

### IV. DISCUSSION

#### A. Defendants' Motion for Partial Judgment on the Pleadings

In its original complaint, filed in June 2009, plaintiff alleges four causes of action: legal malpractice, breach of contract, breach of the implied duty of good faith and fair dealing, and breach of fiduciary duty. The defendants' motion for partial judgment argues that the last three counts are duplicative of the legal malpractice claim, citing a litany of case law to support their

position. In response, the plaintiff "agrees with Defendants, that portions of the Complaint are duplicative," but argues that it should be granted leave to amend its complaint to address these concerns. Pl.'s Resp. to Defs.' Mot. for Partial J. on the Pleadings (July 31, 2012) at 1. Because the defendants are correct in their position, and plaintiff's amended complaint does not adequately address the duplicity problems, the Court will grant defendants' motion.[5]

The plaintiff's four causes of action are based on the same sets of facts and seek identical relief. The plaintiff's claims for breach of contract, breach of the implied duty of good faith and fair dealing, and breach of fiduciary duty are duplicative of its malpractice claim and must be dismissed. Courts in the District of Columbia treat such "breach" claims—when arising from the same circumstances and seeking the same relief as a malpractice claim—as duplicative. *See, e.g., Hinton v. Rudasill,* 384 Fed. Appx. 2, 2 (D.C. Cir. 2010) ("[A]ppellant cannot recast his malpractice claim as a breach of fiduciary duty claim…and he has not shown that his claims of negligence, breach of care, breach of trust, and bad faith are distinguishable from his malpractice claim.") (citation omitted); *Iacangelo v. Georgetown University*, 760 F. Supp. 2d 63, 66 (D.D.C. 2011) ("[T]he plaintiffs' claim for breach of fiduciary duty is entirely duplicative of their claims for medical malpractice and lack of informed consent; this claim rests on the same factual allegations as the other two, would be decided under the same legal standards as one or the other of those claims, and authorizes the same forms of relief."); *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 670 n.4 (D.D.C. 2009) ("Biomet's attempt to recast its [legal] malpractice argument as also breach of contract and breach of fiduciary duty fails."); *Jacobson v. Oliver,* 201

---

[5] Rule 12(c) states that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Although trial is scheduled to begin in September, granting defendants' motion will not delay trial, as it simply seeks to strike duplicative counts—an action that will limit and focus the issues presented at trial. The plaintiff has not contested defendants' motion on the basis that it would delay trial, and has had ample opportunity to oppose defendants' motion and offer its cross-motion. Furthermore, there are no contested issues of fact. This Court finds that even if all of plaintiff's factual assertions are true, Counts II–IV would still duplicate the legal malpractice claim.

F. Supp. 2d 93, 98 n.2 (D.D.C. 2002) ("[T]here is no independent cause of action for an implied covenant of good faith and fair dealing with respect to an attorney's representation of a client.").

Perhaps most persuasive are the prior holdings of this Court.  In *Harvey v. Mohammed*, 841 F. Supp. 2d 164 (D.D.C. 2012) (Lamberth, C.J.), this Court dismissed medical negligence and breach of fiduciary duty claims because they were duplicative of a medical malpractice claim.  Noting that "[a]ll three claims rest on the same factual allegations, would be decided under the same legal standards as one another, and authorize the same form of relief," the Court held that "[a]s a matter of judicial economy, courts should dismiss such duplicative claims." 841 F. Supp. 2d at 180 (internal quotations and citations omitted).  The Court, citing two legal malpractice cases, observed, "In particular, courts applying District of Columbia law should dismiss claims for breach of fiduciary duty that merely restate malpractice claims." *Id.* (citing *Hinton,* 384 Fed. Appx. at 2 (D.C. Cir. 2010); *Biomet*, 967 A.2d at 670 n.4 (D.D.C. 2009)).  In *Washington Metropolitan Area Transit Authority v. Quik Serve Foods, Inc.*, 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006) (Lamberth, J.), this Court approved of the holding in *Jacobson*, F. Supp. 2d at 98 n.2 (cited *supra*), and stated that "breach of the implied covenant [of good faith and fair dealing] is not an independent cause of action when the allegations are identical to other claims for relief under established cause of action."  And most pertinent, when granting defendants' Motion for Partial Summary Judgment in the instant case, this Court held that "because plaintiff cannot succeed on its legal malpractice claim, all of its claims related to NACEPF's Las Vegas market application—breach of contract, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty—will be dismissed." *NACEPF*, 800 F. Supp. 2d at 244 (Lamberth, C.J.).  The Court finds no reason to disagree with itself.

Instead of contesting the defendants' arguments, the plaintiff concedes that "portions of the Complaint are duplicative," but requests that the Court grant it leave to amend its complaint. Pl.'s Resp. to Defs.' Mot. for Partial J. (July 31, 2012) at 1.  The plaintiff argues that the amended complaint will moot the defendants' motion, *id*., as the amended complaint "strik[es] duplicative counts and delet[es] claims that Defendants had objected to."  P. & A. ISO Pl.'s Mot. to Am. Compl. (July 31, 2012) at 2.  This argument fails because the proposed amended complaint does not strike all duplicative counts, and plaintiff's motion to amend complaint should be denied for other reasons, as discussed *infra* in Part IV.B.

The plaintiff's proposed amended complaint deletes allegations relating to the Las Vegas application—claims on which defendants had won summary judgment—and strikes Counts II and III.  The amended complaint alleges two causes of action: one for legal malpractice (Count I) and one for breach of fiduciary duty (Count IV in the original complaint, Count II as amended). The defendants' motion for partial judgment requested that the Court strike all duplicative counts—including the claim for breach of fiduciary duty.  Despite promising that it would address the defendants' concerns, *see* Pl.'s Resp. to Defs.' Mot. for Partial J. at 1, all the plaintiff has done is reduce the number of duplicative counts from three to one.

The amended complaint's breach of fiduciary duty claim is clearly duplicative of its legal malpractice claim.  Count II is based on the same set of facts and requests the same relief as Count I—made glaringly clear by the fact that in Count II, "NACEPF realleges and incorporates by reference paragraphs 1 to 64 of this Complaint as though fully set forth herein."  Am. Compl. ¶ 65.  That represents the entirety of the Complaint, *including* paragraphs 58 to 64—the Count I claim for legal malpractice.  Furthermore, Count I "realleges and incorporates by reference paragraphs 1 to 57."  Am. Compl. ¶ 58.  Thus, the factual allegations underlying Counts I and II

overlap *completely*. The prayer for relief comes after both counts and does not differentiate between counts. *Id*. at 12–13. Plaintiff's attempt to keep its fiduciary duty claim is especially puzzling since most of the cases cited in the defendants' motion for partial judgment *specifically* call out breach of fiduciary duty claims as being duplicative of malpractice claims. *See Hinton*, 384 Fed. Appx. at 2; *Iacangelo*, 760 F. Supp. 2d at 66; *Biomet*, 967 A.2d at 670 n.4; *Harvey*, 841 F. Supp. 2d at 180 (Lamberth, C.J.); *NACEPF*, 800 F. Supp. 2d at 244 (Lamberth, C.J.).

Since the defendants are correct that Counts II, III and IV of the original complaint are duplicative of Count I, and the plaintiff's proposed amended complaint does not eliminate all duplicative counts, the defendants' Motion for Partial Judgment on the Pleadings should be granted.

**B. Plaintiff's Motion to Amend Complaint**

Although the plaintiff's amended complaint would not moot defendants' motion for partial judgment, the Court may still grant leave to amend "if justice so requires."[6] F.R.C.P 15(a)(2). Although the Rule states that leave should be "freely given," a grant is still contingent on the requirements of justice and the factors listed in *Foman*. Courts do not automatically grant leave; they must first consider how the amendment would prejudice the opposing party. *See Zenith*, 401 U.S. at 330–31 (overturning grant of leave as abuse of discretion for failure to consider possible prejudice to opposing party). Courts may deny leave if they find "undue delay, bad faith or dilatory motive." *Foman*, 371 U.S. at 182.

Plaintiffs contend that its amendments are minor and would not prejudice defendants. Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl. (Aug. 10, 2012) *passim*. The Court must

---

[6] In this section, the Court primarily considers the amended factual allegations and legal theories in the amended complaint. The Court assumes, based on its prior discussion of the duplicity of the amended complaint's second count, that if it were to grant plaintiff's cross-motion to amend complaint, it would still strike the duplicative breach of fiduciary duty claim.

10

identify how the amended complaint differs from the original before determining whether it should grant leave to amend. In addition to removing references to its now-defeated Las Vegas claims and striking two of the four causes of action, the amended complaint makes several changes to its factual allegations and revises its breach of fiduciary duty claim.

In its original complaint, the plaintiff alleges that in connection with their dismissed Alamosa, Grand Junction, and Eureka applications:

> Defendant Barr failed to advise NACEPF about the legal significance of settlement periods to NACEPF's applications and the need to pursue settlements in the Alamosa Grand Junction and Eureka markets with other mutually exclusive applicants.

Compl. ¶ 56. In its amended complaint, plaintiff alleges:

> Defendant Barr failed to effectively advise NACEPF about the legal significance of the FCC's abandonment of the "point" system and replacement of it with an auction system as it affected NACEPF's applications Alamosa, Grand Junction, and Eureka markets and the need to pursue settlements in these markets with other mutually exclusive license applicants. Moreover, Defendants provided misinformation to NACEPF that misled NACEPF as to the parties with whom it would need to secure agreement of settlement in order to resolve mutually exclusive application conflicts.

Am. Compl. ¶ 41. In its reply, plaintiff contends that this amended language "raises no new theory. The theory is the same: defendants should have advised NACEPF to pursue settlements and should have properly assisted NACEPF in this FCC activity." Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl. at 3. In their opposition, defendants contend that the amended language "adopts a theory of breach completely different from the original Complaint." Defs.' Opp. to Pl.'s Mot. to Am. Compl. at 6.

The amendment departs from the original complaint in two significant ways. First, instead of alleging that defendants failed to effectively advise NACEPF about the "significance

11

of settlement periods," Compl. ¶ 56, the amended language focuses on "the legal significance of the FCC's abandonment of the 'point' system and replacement of it with an auction system." Am. Compl. ¶ 41. While the legal theory of breach may be the similar, NACEPF has changed the factual underpinnings of its claim. Plaintiff has not explained why it could not have alleged—at a time other than the eve of trial—that the defendants failed to advise it about the legal significance of abandonment of the point system. Defendants would have a right to discovery on this issue, requiring to Court to reopen fact discovery and delay the trial date. *See Hollinger-Haye v. Harrison W./Franki-Denys*, 130 F.R.D 1, 2 (D.D.C. 1990) (stating that amending complaint would give opposing party right to additional discovery). Second, the amended complaint adds a new allegation that defendants provided "misinformation" to NACEPF regarding the settlement of mutually exclusive licenses. This is a brand new allegation and theory of breach—actively providing "misinformation" is not the same as "fail[ing] to advise." The plaintiff claims that "[d]efendants have been aware of NACEPF's claims of breaches of fiduciary duty for years." Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl. at 3. So too, presumably, has the plaintiff. NACEPF provides no reason why "justice requires" it to spring an additional theory of breach on defendants right before trial.

In connection with its application in Swainsboro, Georgia, the plaintiff alleges in its original complaint:

> Defendants' failure to detect the FCC's erroneous dismissal of NACEPF's application deprived NACEPF of the opportunity to obtain the Swainsboro license. Upon information and belief, NACEPF was the only qualified applicant for the Swainsboro license and would have been awarded the license had Defendants detected the FCC's mistake and secured reinstatement of the NACEPF application.

Compl. ¶ 66. The plaintiff proposes to amend this to allege:

12

> When NACEPF inquired of defendant about its ability to preserve its Swainsboro application, neither Barr nor Womble Carlyle informed NACEPF about the finality of the Swainsboro application....Defendants misled NACEPF into believing that it had several weeks available to appeal the dismissal.

Am. Compl. ¶¶ 51–52.  Plaintiff argues that "[t]his [amendment] raises no new issue." Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl. at 5.  It is, to plaintiff, just another example of a "missed deadline." *Id*.  First, plaintiff attempts to reframe its "failure to detect" claim into an allegation that defendants actively misled them.  As discussed *supra*, there is a significant difference between claiming negligent omission and active deceit.  Plaintiffs contend that "the deception in the Albuquerque and Swainsboro markets were first uncovered in discovery." *Id*.  As discussed *infra* at 15–17, the Court does not find plaintiffs' arguments that they only recently discovered this deceit persuasive.

In its original complaint, plaintiff alleges, in relation to NACEPF's existing EBS licenses in Albuquerque, New Mexico that defendant Barr "sent a letter to the FCC, in which he represented that he had enclosed the renewal application for WNC275, but not the renewal application for WLX992."  Compl. ¶¶ 33–34.  In its amended complaint, plaintiff alleges that "[t]he time for the timely renewal of the WLX992 license had already been expired.  Defendant Barr never disclosed this fact to the FCC nor to NACEPF."  Am. Compl. ¶ 18.  Here, the plaintiff makes a new allegation that Barr failed to disclose pertinent information.  As noted *supra* and discussed *infra*, the Court does not find plaintiff's claim that it recently uncovered the deception in the Albuquerque market persuasive.

Taken together, these amendments allege new theories of breach and alter the factual foundations for some claims.  The amendments are not, as plaintiffs contend, mere clarifications raising no new issues.  Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl., *passim*.  The Court

should deny leave because the amendments would unduly increase discovery, delay trial, prejudice the defendants, cause undue delay, and exhibit dilatory motive. The plaintiff has not satisfactorily explained why it could not have made these allegations in its original complaint or at some earlier time—the plaintiffs have been in possession of the facts supporting these new claims since 2006. *Id.* at 2 ("Womble Carlyle's NACEPF client files…were admittedly in NACEPF's constructive possession since they were delivered to Rhode Island in 2006.").

In pursuit of a fair defense, the defendants would "clearly have a right to conduct additional discovery in order to determine the basis of the additional claims." *Hollinger-Haye*, 130 F.R.D at 2. Fact discovery has closed and the trial date is set. Since the amended complaint "would unduly increase discovery or delay the trial," *Djourabchi*, 240 F.R.D. at 13, there is a proper basis for denying leave to amend.

Plaintiff argues that defendants have long been aware that NACEPF might bring these claims, and that the factual bases for the new claims can be found within defendants' files. Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl. at 2–3. The plaintiff then might argue that no new discovery is necessary—each side already has the evidence needed to litigate these claims. Even if this were the case, amending the complaint this close to trial would still prejudice the defendants. One of the purposes of a complaint is to describe the factual and legal bases of a lawsuit, in part to focus the issues and help respondents prepare their defense. *See, e.g., Bell Altantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). While the complainant need not plead in great detail, it must give the respondent notice of the subject matter of the suit. *Twombly*, 550 U.S. at 554–55; *Iqbal*, 556 U.S. at 677–78. It is not incumbent on the respondent—as it defends the claims in the complaint—to concurrently ferret out and prepare defenses to whatever claims the complainant might decide to

14

add later.[7] This Court believes that to allow the defense to fairly and adequately respond to these new allegations, it would need to postpone the trial date. This Court is very hesitant to postpone without good cause. Even if no additional discovery would be required, the amended complaint would either prejudice the defendant or delay trial. The Court is unwilling to do either.

The plaintiff has exhibited undue delay and dilatory motive by amending its complaint on the eve of trial. The evidence underlying the amendments is contained in files that plaintiff has possessed since March 2006. In their opposition to plaintiff's motion to amend, the defendants accurately state the controlling law:

> Leave to amend is "properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint." *Onyewichi v. Gonzalez*, 267 F.R.D. 417, 420 (D.D.C. 2010); *see also Anderson v. USAir, Inc.,* 818 F.2d 49, 57 (D.C. Cir. 1987) (concluding that the district court did not abuse its discretion in denying a motion to leave to amend the complaint as the proposed claims were based on facts known to the plaintiff prior to the completion of discovery). Leave to amend is also appropriately denied where "[t]he discovery schedule had been agreed to by the parties and completed as planned to ensure an expeditious resolution of the case." *Anderson*, 818 F.2d at 57; *see also Hollinger-Haye*…130 F.R.D. [at 2] (denying plaintiff's notion for leave to amend because "the additional counts were based on facts known to the plaintiff prior to the completion of discovery[.]")[.]

Defs.' Opp. to Pl.'s Mot. to Am. Compl. at 2. Plaintiff claims that it only recently discovered the facts underlying the new allegations. Pl.'s Reply to Defs.' Opp. to Mot. to Am. Compl. at 2. Plaintiff does not claim, however, that the facts recently came to them through newly-produced documents or other information not previously available. Plaintiff seems to concede that the

---

[7] Plaintiff might argue that the new allegations should not come as a surprise to defendants, since the documents underlying the allegations come from the defendants' files—and the defendants should know, after all, that malpractice was committed because they committed the malpractice. These facts, however, do not relieve plaintiff from its responsibility to properly plead its complaint and put defendants on notice of the claims against them. Pleadings should not boil down to: "You did something wrong. You know what you did wrong. Now look through your files and refresh your memory."

15

information came from the boxes that "were admittedly in NACEPF's constructive possession" since 2006. *Id*. Now, on the eve of trial, plaintiff wants to make new allegations based on information it had access to for six years. Following the precedent cited by the defendants *supra*, this motion to amend comes too late in the game. This Court could properly deny leave on the basis of undue delay and dilatory motive.

Plaintiff states that "no one, including prior counsel, examined the documents because of the mutual agreement to stay discovery on the remaining markets….The rationale behind the suspended discovery was the hope that the resolution of the Nevada issue would facilitate the resolution of the claims in the remaining markets." *Id*. The fact that plaintiff did not bother to look at the files—which it had in its possession, again, since 2006—until 2012 does not excuse the delay. The plaintiff makes no allegation that, at any time, anyone interfered with its access to those files. The agreement to stay discovery did not come until years after plaintiff already had the client files, and nothing in the agreement forbade NACEPF from reviewing documents it already had. Perhaps most puzzling is plaintiff's free admission that it did not examine the documents in the client file until *years after* filing its complaint. For almost three years before it filed suit, the plaintiff had unfettered access to the files containing—likely—the most important evidence of defendants' malpractice. Apparently, when deciding whether to bring suit, neither the plaintiff nor its counsel examined the client files. When deciding which claims to bring and which facts to allege, apparently neither the plaintiff nor its counsel bothered to examine key evidence to which it had access. Even if we accept plaintiff's argument that it did not know of the facts giving rise to the amendments until recently, plaintiff had in its possession—for six years—facts sufficient to make the allegations it now seeks to assert. Justice does not require this Court to bless plaintiff's attempts to plead first and investigate later. *See Williams v. Savage*,

16

569 F. Supp. 99, 108 (D.D.C. 2008) ("Because the plaintiffs could have included these allegations earlier and because they have not justified their delay, they have demonstrated a dilatory motive or bad faith."); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) (holding that a federal district court "plainly has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant.").

Each of the aforementioned reasons—unduly increasing discovery, delaying trial, prejudicing the defendants, exhibiting dilatory motive—would, by itself, be sufficient to deny leave. Leave to amend is only "freely given" when "justice so requires." F.R.C.P. 15(a)(2). The plaintiff has not adequately justified why this Court should permit plaintiff to make significant eleventh hour changes to its complaint. For the aforementioned reasons, plaintiff's Motion to Amend Complaint should be denied.

## V.    CONCLUSION

Defendants made a clear and convincing case that several counts of plaintiff's complaint are duplicative and should be stricken. The plaintiff did not—as it could not—seriously contest this argument. Instead, plaintiff offered an amended complaint with the promise that it would resolve the issues. The amended complaint, however, still contained a duplicative count and alleged a host of new facts and theories based on information plaintiff possessed since 2006. For the reasons stated above, this Court grants defendants' Motion for Partial Judgment on the Pleadings and directs the clerk to strike Counts II, III, and IV in the original complaint. Furthermore, this Court denies plaintiff's Motion to Amend Complaint.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 24, 2012.